IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

PATRICIA JEAN RANDOLPH,

    Plaintiff,    NO. 2:17-cv-00045

vs.    CHIEF JUDGE WAVERLY D. CRENSHAW, JR.
    Magistrate Judge Kemp

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

To: The Honorable Waverly D. Crenshaw, Chief Judge

## REPORT AND RECOMMENDATION

    This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. On January 21, 2018, Plaintiff filed a motion for judgment on the record (Doc. 16) and a supporting memorandum (Doc. 17). The Commissioner responded on March 12, 2018. (Doc. 20). For the following reasons, it will be recommended that the Plaintiff's motion be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### I. Background

    Plaintiff filed her applications for benefits on February 6, 2014, asserting that she became disabled on July 24, 2013. On June 2, 2014, those applications were denied, and Plaintiff's request for reconsideration was denied on November 12, 2014. She then asked for a hearing before an Administrative Law Judge (ALJ). A hearing was held on March 11, 2016. Plaintiff and a vocational expert, Pedro M. Roman, testified at the hearing.

    In a decision dated May 27, 2016, the ALJ determined that Plaintiff did not meet the requirements for disability. Plaintiff sought review of that decision from the Appeals Council, but her appeal was denied on June 6, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 10).

## II. The Findings and Conclusions of the ALJ

In her decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

1. The claimant meets the insured status requirements of the Social Security Act through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity since July 24, 2013, the alleged onset date.

3. The claimant has the following severe impairments: non-insulin dependent diabetes mellitus with peripheral neuropathy, fibromyalgia, obesity, and degenerative disk disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and carrying 20 pounds occasionally, ten pounds frequently, sitting six hours in an eight-hour workday, standing and/or walking six hours in an eight-hour workday, occasional postural activities except no climbing ladders, ropes and scaffolds, frequent pushing and pulling with both lower extremities, and frequent handling with both upper extremities.

6. The claimant is unable to perform any past relevant work.

7. The claimant is an individual closely approaching advanced age.

8. The claimant has a limited education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 24, 2013, through the date of this decision.

12. The claimant's subjective complaints have been evaluated as to their consistency with the medical evidence of record, as required under applicable regulations and rulings, including SSR 16-03p.

### III. Plaintiff's Claims

Plaintiff makes the following claims in her motion for judgment and memorandum:

1. The ALJ erred in failing to consider the Plaintiff's obesity.

2. The ALJ erred in her evaluation of Plaintiff's credibility.

3. The ALJ erred in the weight given to Ms. Randolph's treating physicians.

### IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.,* 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

#### A. Hearing Testimony

Plaintiff first testified that she was 52 years old and lived in a trailer with her husband. She did some chores around the house, but had to sit down before completing them. She could stand for less than five minutes, but also had back pain when sitting. Her children helped with chores. Plaintiff shopped for groceries once a month and could push a cart while leaning on it. She also drove once a day to pick up her youngest daughter who lived just behind her. Also, she could shower and dress on her own.

Plaintiff had not worked since 2013. She had been a seamstress for thirty years but was fired because she was working too slowly due to pain. Plaintiff completed the ninth grade and had some trouble reading longer words, but she could pay bills and make change.

The most serious problem she had, according to Plaintiff, was pain in her hands and legs. She could no longer grip material, although she was able to operate a television remote and a cell phone. Her feet hurt at might and she had extensive leg pain. She also got knots in her shoulders which her doctor had injected. Plaintiff said she had a hiatal hernia and some issues with her back, as well as some memory problems and anxiety. (Tr. 26-47).

The other testifying witness was Pedro Roman, a vocational expert. He noted that Plaintiff's past relevant work included the jobs of sewing machine operator for household articles and sewing machine operator for garments. Those jobs were both light and semi-skilled.

Mr. Roman was then asked questions about a hypothetical person who could work at the light exertional level but who should never climb ladders, ropes or scaffolds. The person could occasionally engage in all other postural activities. In response, Mr. Roman said that such a person could do Plaintiff's past jobs. If the person could handle only frequently, as opposed to constantly, he or she could not do that work, because it requires constant handling. However, the person could work as a prep cook, mail clerk, inspector, or hand packager. He gave numbers for those jobs as they exist in the national economy. He also testified that they required the person to stand or walk for more than three hours a day. If that limitation were imposed, coupled with the others listed by the ALJ, it would preclude all light work for someone with Plaintiff's vocational profile. The same would be true for the need to take two additional fifteen-minute work breaks during the day. (Tr. 47-53).

#### B. Medical Evidence

The third of Plaintiff's three statements of error is the only one which specifically refers to the medical record. The Court will therefore focus on the records of the treating physician, Dr. Anderson, whose opinion was discounted by the ALJ - erroneously, in Plaintiff's view - based in part on range of motion studies showing that Plaintiff's movements were limited.

Dr. Anderson had been treating Plaintiff since at least 2013. He was associated with Monroe Family Medical Center, and Plaintiff also saw Dr. Carter at that practice. Many of the office notes are from Dr. Carter, who treated Plaintiff for various conditions including leg and hand pain. Those notes show, for the most part, that Plaintiff had no join pain, tenderness, or deformity, and that the range of motion in her major was intact. *See, e.g.,* Tr. 284, 287, 320. Dr. Anderson filled out a physical capacities evaluation report on January 8, 2015, stating that in his opinion Plaintiff could sit for only two hours and walk or stand for only two hours in a workday, could not use her hands for pushing or pulling, could not use her feet for repetitive movements, could not lift more than ten pounds, could never climb or crawl, and could not be around unprotected heights or moving machinery. He said she also suffered from pain and fatigue so severe that she could not do even sedentary work. (Tr. 294-97). His office notes from that day show that Plaintiff's back movements were painful with flexion and extension and that she had lower leg and foot pain. (Tr. 328-330). There are also emergency department notes from October of 2015 showing that Plaintiff reported chronic pain and showed extreme pain and tenderness of the legs during an examination, which appeared to be associated with a diagnosis of peripheral neuropathy. (Tr. 342-46).

There is a consultative medical report in the record as well. The examiner, Dr. Johnson, noted that Plaintiff had been diagnosed with diabetes and she complained of associated leg pain. She also had shoulder and hand pain, possibly due to fibromyalgia. Lyrica helped her symptoms but she could not afford to take it as often as prescribed. Her weight was recorded as 303 pounds. The examination showed a full range of motion in the neck and spine but there was tenderness to palpation at L4-5. Straight leg raising was negative. There was a mild limitation in the range of motion of the hips. Twelve trigger points were noted, and Plaintiff could not squat and rise. Her gait and station were unremarkable. Dr. Johnson's impressions included non-insulin dependent diabetes, fibromyalgia, arthritis, a history of thrombosis, and low back syndrome. He concluded that Plaintiff could lift twenty pounds occasionally, stand and walk for about three house out of eight due to her back condition and obesity, and could sit without restrictions. (Tr. 267-69).

Finally, the record contains a range of motion study signed by a Dr. Harris. It shows somewhat greater restrictions that indicted by Dr. Johnson, including not only restrictions in the hip but also in the knee and dorsolumbar spine. The latter showed flexion reduced to 45 degrees (90 is normal), no extension at all, and reductions in both right and left lateral flexion. (Tr. 271-72).

### C. The ALJ's Decision

The ALJ's determination of Plaintiff's residual functional capacity is brief, consisting of only one paragraph of discussion. The ALJ began by giving great weight to the opinions of the state agency physicians. Both reviewers, Dr. Millis and Dr. Curtsinger, concluded that Plaintiff could do a reduced range of light work, basing their opinions about her exertional and postural limitations on her morbid obesity. Those physicians also gave no weight to the opinion of Dr. Johnson, the consultative examiner, because his examination showed no motor sensory deficits and a normal tandem walk. (Tr. 59-61 and 82-84). Next, the ALJ assigned little weight to the treating source opinions, explaining that Dr. Carter's view that Plaintiff had significant restriction in her range of motion was contradicted by Dr. Johnson's findings, and that "[t]here is no justification for Dr. Anderson's opinion as to why claimant would be limited in lifting, carrying, standing, walking, or sitting" because "his treatment records do not support his limitations." (Tr. 15). Finally, the ALJ found that the standing and walking limitations contained in Dr. Johnson's consultative report were not supported by his findings, although the ALJ did give great weight to the rest of his conclusions.

There is a more complete discussion of the medical evidence, and of Plaintiff's testimony (which was not mentioned in the section of the administrative decision discussing residual functional capacity), in the part of the administrative decision determining whether any of Plaintiff's impairments satisfied the criteria found in the Listing of Impairments. There, the ALJ pointed out that Plaintiff had sought little treatment during the period in question, and most of that treatment was for diabetes and high blood pressure. The ALJ also extensively reviewed the treatment records relating to leg pain, noting that there was no objective confirmation of Plaintiff's complaints, and reviewing the conflicting reports about limitations in Plaintiff's range of motion. (Tr. 13-14).

Finally, after recounting, at Tr. 14, Plaintiff's testimony and the statements she made in her function report, the ALJ ended her decision with a finding that Plaintiff's subjective complaints were not completely consistent with the medical evidence. The ALJ stated that "[n]o objective testing was done to establish that she had peripheral neuropathy" and that she was "able to walk on her own without assistance...." (Tr. 16). Further, most examinations of her extremities were essentially normal, and there was no objective evidence of decreased sensation in her legs even though she had reported that symptom. The ALJ also commented on the fact that some of Plaintiff's activities of daily living, such as driving 30 minutes to pick up her daughter, were inconsistent with her statements that she was more limited in how long she could sit. Finally, the ALJ observed that most of the limitations on Plaintiff's ability to do work-related activities stemmed from her morbid obesity, but that she had suffered from that impairment for many years and had been able to work in spite of it. (Tr. 17).

## VI. Discussion

### A. Obesity

Plaintiff's first statement of error is that the ALJ did not properly consider her obesity in

determining her residual functional capacity. Plaintiff acknowledges that the ALJ found obesity to be a severe impairment, but argues that the ALJ "totally failed to discuss the impact of obesity on Plaintiff's functioning." Doc. 17, at 12.

This claim requires little discussion. As the Court's summary of the ALJ's decision indicates, the ALJ both relied on the opinions of the state agency reviewing physicians, who attributed Plaintiff's functional limitations to her obesity, and independently concluded that obesity did not account for the more severe limitations to which Plaintiff testified because Plaintiff had been able to work for many years despite her obesity. An ALJ may properly incorporate matters taken into account by reviewing physicians into the administrative decision. *See, e.g., Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. Jan. 31, 2006)("the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity"). Since neither the record nor the applicable law supports Plaintiff's claim on this issue, the Court finds her first statement of error to lack merit.

### B. Credibility

Next, Plaintiff argues that "the ALJ's consideration of [her] subjective pain complaints and assessment of her credibility do not comport with the Administration's requirements." Doc. 17, at 13. That is so, she says, because "the ALJ did not reach a conclusion about the Plaintiff's credibility." *Id*. She then cites to one example where the ALJ noted a difference between Plaintiff's testimony and her function report, but asserts that this particular difference - dealing with whether Plaintiff could do dishes - "was not a contradiction." *Id*.

This argument is, in light of the record, somewhat difficult to understand. The ALJ devoted an entire section of the administrative decision to Plaintiff's credibility (or, using the terminology of the most recent ruling on the issue, SSR 16-3p, the consistency of Plaintiff's subjective complaints with the entirety of the record) and clearly found that Plaintiff's assertion that she was limited in her ability to sit, stand, and walk to the point where she could not work was not supported by the record. The ALJ referred to both the objective medical evidence, which did not demonstrate the existence of debilitating impairments, and to activities of daily living. These are precisely the factors which SSR 16-3p requires an ALJ to take into account. *See Young v. Berryhill,* 2018 WL 1914732, *6 (W.D. Ky. Apr. 23, 2018)(under SSR 16-3p, an ALJ must "consider all of the claimant's symptoms to include her pain, and the extent to which these symptoms reasonably can be expected to be consistent with the objective medical evidence of record" and evaluate numerous factors including "(1) the severity of the objective medical evidence of record; (2) the statements of the claimant about the intensity, persistence and limiting effects of her symptoms; (3) clinical findings and observations about such symptoms; (4) statements from other sources that have information about the claimant's symptoms; (5) the daily activities of the claimant; (6) any factors that precipitate or aggravate the symptoms; (7) the type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms; (8) treatment, other than medication, for relief of pain or other symptoms; and (9) any

other factors about the claimant's functional limitations and restrictions due to pain or symptoms"). The Court finds no violation of the applicable law here, and therefore no merit in Plaintiff's second claim of error.

### C. Treating Physician

Plaintiff's third and final claim of error is that the ALJ erred in the weight given to Dr. Anderson's opinion. The supporting argument focuses on a single issue: Plaintiff asserts that the ALJ discounted Dr. Anderson's opinion "partially because no limitations in range of motion were found in Dr. Johnson's report" but, in fact, there is one report in the record documenting limitations in the range of motion in Plaintiff's dorsolumbar spine. *See* Doc. 17, at 14.

Plaintiff alleges a violation of the "treating source" rule found in 20 C.F.R. §416.927(c). As this Court has explained,

> The opinion of an examining non-treating source is given greater weight than that from a non-examining source and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data. *Jones* [*v. Comm'r of Social Security*], 336 F.3d [469 (6th Cir. 2003)], at 477 (citation omitted). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.' " *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "Moreover, when the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527( [c] )(5)).
>
> "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones*, 336 F.3d at 477. The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for

that weight.' " *Blakley*, 581 F.3d at 406–07 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5).

*Mcwhorter v. Berryhill*, 2017 WL 1364678, at *8–9 (M.D. Tenn. Apr. 14, 2017).  It is true that "[a]n ALJ need not articulate a factor-by-factor analysis of a non-controlling treating source opinion" such a failure can be excused only if "the ALJ actually considers the listed factors and provides 'good reasons' for the weight given to the opinion." *Williams-Lester v. Soc. Sec. Admin.*, 2016 WL 4442797, at *25 (M.D. Tenn. Aug. 18, 2016).

Here, Plaintiff's claim of error takes issue with the ALJ's critique of Dr. Anderson's opinion as unsupported by range of motion studies, which, as Plaintiff acknowledges, constitutes only part of the reason given by the ALJ for assigning little weight to that opinion.  In fact, the ALJ did not limit her rationale to the range of motion studies issue, finding instead that none of Dr. Anderson's treatment records supported the extreme limitations he placed on Plaintiff's ability to sit, stand, and walk. (Tr. 15).  Further, as the Court's summary of the medical records points out, there is a conflict in the evidence relating to range of motion.  The ALJ clearly resolved this conflict in favor of determining that there were no limitations on Plaintiff's range of motion which would prevent her from performing at least a limited range of light work.  It is the ALJ's prerogative to resolve conflicts in the medical evidence, and the Court cannot re-examine that resolution unless it is unsupported by substantial evidence.  *See, e.g., Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *Maze v. Colvin*, 2018 WL 3599968, *2 (W.D. Tenn. July 27, 2018).  Finally, it is difficult to see how the relatively modest limitations in the range of motion of Plaintiff's dorsolumbar spine would prevent her from sitting, standing, or walking to the extent found by Dr. Anderson.  For all these reasons, the Court finds no merit in Plaintiff's third claim of error.

### VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 16) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### VIII.  Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection.  *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b).  Any response must be filed withing 14 days thereafter.  Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal.  *See, e.g., Robert v. Tesson,* 507

F.3d 981,994 (6th Cir. 2007)

/s/ Terence P. Kemp
United States Magistrate Judge